**BRADFORD, LTD**
Aaron P. Bradford, Esq. (*pro hac vice* application forthcoming)
Mishele Kieffer, Esq. (*pro hac vice* application forthcoming)
2701 Lawrence Street
Denver, Colorado 80205
Telephone: (303) 325-5467
Aaron@apb-law.com
Mishele@apb-law.com

**THE LAW OFFICE OF VINCENT MILETTI**
Vincent Miletti, Esq.
2139 East 3rd Street
Brooklyn, New York 11223
Telephone: (347) 234-0034
Vmiletti@aol.com

*Counsel for Plaintiff Onyx Enterprises Int'l, Corp.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ONYX ENTERPRISES INT'L, CORP.**, a New Jersey corporation, | |
| **Plaintiff,** | **Case No.** |
| **v.** | |
| **VOLKSWAGEN GROUP OF AMERICA, INC.**, a New Jersey corporation, | **COMPLAINT AND JURY TRIAL DEMAND** |
| **Defendant**. | |

Plaintiff Onyx Enterprises International, Corp. ("Onyx") hereby sues

Defendant Volkswagen Group of America, Inc. ("VW") as follows:

## NATURE OF ACTION

1.      Onyx seeks injunctive relief and damages arising from VW's willful infringement of its house mark, iD®. Onyx has used the mark in interstate commerce in connection with the sale of automotive products since at least 2009.

2.      Onyx is one of the largest retailers of automotive products in the United States.   Since at least 2009, Onyx has maintained its iD® branded eCommerce platform for the sale of millions of original equipment and aftermarket automotive products from thousands of brands, including Volkswagen.



3.      Onyx specifically reserves portions of its platform for the targeted sale of original equipment and aftermarket Volkswagen parts and accessories, as do all of its competitors.

4.      Currently, neither VW nor Onyx's competitors are marketing or selling ID branded products in the United States.  As a result, millions of actual and potential

consumers associate ID with the unique Onyx automotive product buying experience.



5.     Despite full knowledge of Onyx's conceptually and commercially strong iD® house mark, VW has announced plans to begin manufacturing, importing, distributing, and selling in the United States a new line of automobiles and associated parts and fittings in 2020 that will be branded "ID."

 

6.     In advance of VW's 2020 launch of the ID line of automotive products, VW twice had its attempt to register versions of "ID" rejected and suspended by the United States Patent & Trademark Office ("USPTO"). On January 23, 2018, the

3

USPTO refused VW's attempt to register "I.D." due to a likelihood of confusion with the Onyx iD® Mark.  Undeterred, VW launched a second attempt to trademark "ID." on May 7, 2018.  Citing to Onyx's iD® registration, the USPTO rejected VW's attempt to register "ID." on January 4, 2019 and again on August 23, 2019 due to the likelihood of confusion with Onyx's house mark:

> Conclusion
>
> In conclusion, the parties utilize highly similar marks featuring identical literal elements and conveying a highly similar overall sound and impression in connection with related goods and/or services marketed to the same consumers through similar channels of trade.  Therefore, registration of the applied-for mark is refused.

*See* Exhibit 1, August 23, 2019 Office Action, pg. 5.

7.     In December of 2019, VW approached Onyx to request that Onyx permit VW to use "ID" on its new line of electric automobiles and associated parts and accessories.  *See* Exhibit 2, Letter from Barth DeRosa dated December 4, 2019.

8.     By letter dated February 24, 2020, Onyx declined to license its extremely valuable house mark to VW and expressly requesting that VW rebrand its new electric automotive line, stating:

> *Onyx agrees that the allowance of a VW ID mark would create a high likelihood of confusion within the automotive industry.  The Onyx ID brand was established in 2009 and has become one of the most famous and recognizable brands within the automotive industry.  Onyx has invested millions of dollars annually to build the ID brand and to create the largest current marketplace for the purchase of automotive parts and accessories from over 5000 different brands.  Further, it has been Onyx's policy to decline all requests to license its trademarks, including the Onyx ID Mark. In the end, Onyx has worked hard to maintain independence to ensure*

> *that customers trust it to direct them to the right products without influence by others. Permitting VW to use "ID" will necessarily dilute and undermine Onyx's core brand identity with consumers, distributors and other manufacturers.*
>
> *This is not a decision reached without serious consideration of your request. It is important for VW to understand that Onyx has expended substantial time and resources building the ID brand into one of the largest eCommerce platforms for the sale of automotive parts and accessories. Onyx has no present intent to take an action adverse to VW and will certainly defer any action to allow VW to complete necessary changes not to infringe on Onyx iD Brands. In the interim, Onyx reserves its rights to protect its intellectual property as needed.*

*See* Exhibit 3, Letter from BRADFORD to DeRosa dated February 24, 2020.

9.     On the same day, VW filed an appeal with the trademark examiner pleading for reversal of his position that VW was not entitled to register ID for automotive products and services. VW's plea, however, was flatly at odds with the very positions VW took in multiple trademark enforcement actions VW filed in Federal Court, as discussed at Paragraph 143-152 of this Complaint. Just two days later, the examiner rejected VW's attempt to register ID for a fourth time. Not to be deterred, VW filed a trademark application for CARIAD two weeks later, a mark that is confusingly similar to Onyx's CARID registration. On May 30, 2020, the trademark examiner promptly rejected VW's attempt to register CARIAD, warning VW, for the fifth time, that is cannot register a mark that is confusingly similar to one owned by Onyx.

5

10.     Despite clearly stated positions from the USPTO and Onyx, VW persists with its plan to launch a line of vehicles, parts, accessories, and fittings along with associated retail and wholesale services unlawfully branded "ID."  In fact, VW intends to introduce an automotive assistant, think Siri, known as "ID," along with an entire automotive way of life atop the ID branding and personality.



*See* "Volkswagen ID.3 1ST Edition - Colours and Features," YouTube, *available at* https://youtu.be/lRz1MdC34fQ; Exhibit 4, Press Release, VW, Volkswagen electric car ID.3 communicates using light (Oct. 9, 2019).

11.     Onyx's exclusive position as the predominate ID brand in the automotive industry will change the moment VW begins marketing, importation and sale of VW ID automobiles in the United States.  VW has announced that it will commit billions of dollars to ensure that the VW ID brand is a household name by

2025. By design, VW will cause the creation of an entirely new economy around its unlawful, anti-competitive and willfully tortious use of Onyx's ID mark in association with VW's ID family of automotive products, accessories, retail, and wholesale services. VW ID branded products will be sold through over 600 VW authorized dealerships in the United States as well as the many online retailers such as Amazon, AutoZone, AutoAnything, etc., all of whom currently compete with Onyx for the sale of original and aftermarket parts.

12.     Injunctive relief is necessary as Onyx's market position will evaporate in the face of VW's unlawful, anti-competitive and willful infringement. Both VW and aftermarket manufacturers will brand original equipment and aftermarket parts with "ID" or will otherwise market them for use with the VW ID new line of automobiles. In support of the new VW ID economy, VW, VW authorized dealerships, and Onyx's competitors will commit billions of dollars to market and sell VW focused ID products, parts, and accessories. Onyx will lose all control over its house mark, the goodwill generated over the past decade, and the business trajectory that it was on when VW ID launches its infringing line of ID branded products and services.

13.     Despite its current size, Onyx will have no means to compete or mitigate against VW's use of ID within the automotive aftermarket. Further, Onyx will have no means to combat the use of ID by Onyx's competitors when they:

7

a. Dedicate portions of their platforms to sell ID branded original equipment and aftermarket parts;

b. Host VW ID product pages in order to drive traffic to their eCommerce platforms;

c. Spend millions of dollars purchasing clicks and search results in order to attract VW ID enthusiasts looking for parts and accessories to go with the 17 sub-brands that VW has indicated it will launch under the brand; and

d. Drive traffic to their sites, and away from Onyx, by using "ID" in a fashion that Onyx cannot control or combat.

14.    As a result of VW's marketing efforts coupled with the supporting efforts of dealerships and retailers in support of the VW ID brand, Onyx will be irreparably harmed.  Once fully launched, the breadth and scope of VW's use of ID to market and sell automotive products and services will create massive consumer confusion that will obliterate Onyx's ID brand, goodwill, market position, brand strength and recognition, as well as trajectory as the leading eCommerce retailer of the very original equipment and aftermarket parts that VW will try and dominate with its ID branded economy.

15.    A courtesy copy of this Civil Complaint was provided to Volkswagen on July 22, 2020 in an attempt to convince it to alter course and rebrand.  No

substantive response was received.  Onyx thus brings this action for injunctive relief and for damages for trademark infringement, unfair competition, and false designation of origin pursuant to the Lanham Act (15 U.S.C. § 1051, *et seq.*), and trademark infringement, unfair competition, and deceptive trade practices pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. §§56:8-1 to -204, and the common law of the State of New Jersey.

## PARTIES

16.     Onyx is a New Jersey corporation having a principal place of business at 1 Corporate Drive, Suite C, Cranbury, New Jersey 08512.

17.     Upon information and belief, VW is also a New Jersey corporation having a principal place of business at 2200 Ferdinand Porsche Dr, Herndon, Virginia, 20171-6243.

## JURISDICTION & VENUE

18.     The Court has subject matter jurisdiction over the asserted claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b) and 28 U.S.C. § 1367(a).

19.     The Court has personal jurisdiction over the New Jersey corporation VW as it has committed tortious acts in this District, maintains a website accessible in this District and has and will continue to transact substantial business in this

District, and regularly solicits business from, does business with, and derives value from goods and services provided to, consumers in this Judicial District.

20.     Venue is proper here pursuant to 28 U.S.C. § 1391(b) and (c) because VW committed substantial acts of infringement, as well as acts of unfair competition and deceptive trade practices in this Judicial District, and because it provides goods and does business within this Judicial District.

## FACTUAL BACKGROUND

## CREATION, GROWTH, AND SCOPE OF ONYX'S iD® MARK.

21.     As early as 2008, Onyx deployed its iD® Mark to brand its eCommerce platform designed to sell complex product portfolios.  For more than a decade, Onyx has been singularly focused upon the creation of a unique, comprehensive, and reliable online customer experience for those seeking to purchase automotive products, both original equipment ("OE") and aftermarket parts.  By reliably connecting consumers to millions of products from thousands of brands, Onyx drove consumer confidence in the purchase of automotive products online and established the iD® brand as the leader in online automotive product sales.

22.     Onyx is a pure online retailer.  When formed, the market for the online purchase of automotive parts was minimal.  In 2008, Onyx launched its first iD® branded platform, www.CARiD.com, and funded a consistent and persistent effort to compete with traditional trade channels for the sale of automotive products by

10

creating demand for products online.  The following screen shot is a capture from www.archive.org, known popularly at The Way Back Machine.  It depicts the earliest ID eCommerce Platform for the sale of automotive products and accessories:



*(Screenshot from The Way Back Machine, March 21, 2009)*

23.    To compete with traditional automotive retailers and create consumer confidence for the online purchase of automotive products, Onyx invested hundreds of millions of dollars marketing and developing its brand, constructing a proprietary platform coupled with a comprehensive product catalog featuring millions of OE/AM products from thousands of brands.  Onyx also integrated customer service and consumer education components to create a comprehensive online experience that customers enjoy and companies respect.

24.     Through this effort, Onyx has grown the iD® brand into one of the largest online retailers of automotive products in the United States.  At the time it was formed in 2008, online traffic for the sale of automotive products was virtually non-existent, as depicted below.  Today, Onyx receives over 10 million visitors to its site each month, nearly three times its closest online direct competitor.

25.     Figure 1 is a graphical representation from a SpyFu, Inc.[1] demonstrating the number of monthly SEO clicks directed at the top pure online retailers from 2006 through the present. *See* Exhibit 5, Decl. of Aaron P. Bradford, Attachment 1.  Using only www.CARiD.com, Onyx represents the top performer as represented by the top, red line below:



FIGURE 1

---

[1] Figures 1–5 were derived from analysis tools available at www.spyfu.com, a third party with which Onyx has no relationship.  Figures 1-5 were generated using various publicly available competitor information.  Figures 1-5 are provided to demonstrate the relative market position of the selected domains over time.  Figures 1-5 were not produced using data maintained by Onyx.

26.     Figure 2 is a graphical representation of the number of monthly clicks directed at a comparison of the top online retailers, with Onyx as the top line, from 2015 through the present. *See* Exhibit 5, Bradford Decl., Attachment 2.



FIGURE 2

27.     After Onyx launched its iD® platform in 2008, traditional automotive product retailers such as AutoZone, Advanced Auto Parts, O'Reilly Auto/Pep Boys, and NAPA started to heavily invest in eCommerce.  Specialty brick and mortar retailers, such as 4 Wheel Parts and others, also followed suit.  Figure 3 is a graphical representation of the performance, expressed in terms of monthly clicks, of the top six traditional retailers' domains from 2006 through the present.  *See* Exhibit 5, Bradford Decl., Attachment 3.



FIGURE 3

28.     Through its concerted campaign to drive its iD® Mark to the center of consumer purchasing for automotive parts and accessories, Onyx has outperformed all traditional retailers online other than AutoZone.  *See* Exhibit 5, Bradford Decl., Attachment 4.  Onyx is again represented by the red line, which is just below AutoZone:



FIGURE 4

29.     Figure 4 is a graphical representation of the number of monthly clicks on the indicated domains from 2015 through the present.

14

30. To achieve these results, Onyx committed substantial resources to ensure that it would perform relative to its competition, both authorized VW dealerships, traditional retailers and the field of pure eCommerce retailers.

31. To maintain its position relative to eCommerce and traditional retailers, Onyx has similarly outspent the competition to drive traffic to its iD® Branded platforms. Onyx has spent nearly $200 million in marketing its brand.

32. As a result of its efforts, Onyx's online presence exceeds the profiles of its top online competitors according to SpyFu's Kombat feature:



FIGURE 5

33. Like the end consumer, most automotive product manufacturers, both OE and aftermarket, associate the iD® brand with Onyx and its unique, comprehensive, and reliable eCommerce platform. Authorized dealerships regularly

15

turn to Onyx's platforms to source original parts as well as aftermarket parts. Onyx works with manufacturers and distributors of OE and aftermarket products to build educational tools and product pages to connect the right customer, with the right brand, for the right car.  The Brands associate the iD® Mark with quality service and professional product placement.

34.    The substantial brand power behind the iD® Mark that has been developed for over a decade is reflected in a consistent commercial impression: When consumers and/or Brands see the iD® Mark with its unique properties and design elements, they know to expect quality, service, and professionalism, deriving from a very specific and distinguishable source.

35.    Leveraging its famous mark and the goodwill customers associate with the iD® brand, Onyx expanded its suite of eCommerce platforms into other complex market product portfolios.



36.     For example, Onyx developed and released its MOTORCYCLEiD®
mark in July 2018.  Similar to CARiD®, MOTORCYCLEiD® conveys to customers
that they can come to Onyx—and MOTORCYCLEiD®—to identify the unique parts
and pieces that are suited for that customer's particular motorcycle.

37.     For example, Onyx developed and released its TRUCKiD® mark in July
2018.  Similar to CARiD®, TRUCKiD® conveys to customers that they can come to
Onyx—and TRUCKiD®—to identify the unique parts and pieces that are suited for
that customer's particular semi-truck or other oversized or commercial vehicle.

38.     Onyx's iD® Mark and the reputation it has developed in association
with its iD® trademark and iD® brand have grown over time and as the quality of its
products and services have become legend.  To protect these rights and the good will

17

they engender, Onyx has registered the following marks: BOATiD®, CAMPERiD®, MOTORCYCLEiD®, POWERSPORTSiD®, RECREATIONiD®, STREETiD®, TOOLSiD®, and TRUCKiD®. Onyx has launched associated eCommerce platforms utilizing the same trade dress.



| | |
|---|---|
| [www.CAMPERiD.com](http://www.CAMPERiD.com) |  |
| [www.MOTORCYCLEiD.com](http://www.MOTORCYCLEiD.com) | |
| [www.POWERSPORTSiD.com](http://www.POWERSPORTSiD.com) | |

19

| www.RECREATIONiD.com |  |
| www.TOOLSiD.com | |

39.     Onyx's CARiD® branded services have received consistently high ratings.

40.     Onyx has an "Elite" rating of 9.5/10 out of about 102,877 reviews on www.ResellerRatings.com.   Based on the reviews submitted within the last six months, Onyx's CARiD® branded services has an average customer service rating of 9.09/10 and a "chance of future purchase" rating of 8.99/10.

41.     Onyx has an "A+" rating with the Better Business Bureau.

42.     Onyx has a 4.7 out of 5 on Google Reviews based upon just under 10,000 reviews.

43.     Onyx's CARiD® Facebook page currently has a 4.4/5 rating out of about 20,088 reviews.

44.     The CARiD® Instagram account currently has approximately 39,000 followers while the CARiD® Facebook account currently has over 2.5 million followers.  The CARiD® YouTube Channel has over 69,100 subscribers and over 35.6 million views.

45.     As a result of its efforts, including its extensive financial investment, Onyx has made a substantial amount of sales through its iD® brand in the United States and abroad.  Sales of products sold through Onyx's CARiD® and other iD® branded services have far exceeded those of the majority Onyx's direct competitors in the United States and abroad.

## ONYX'S INTELLECTUAL PROPERTY PROTECTIONS.

46.     In addition to the strong consumer recognition, the iD® brand enjoys substantial state and federal trademark protections given its ubiquitous and consistent use since 2008.  Onyx is the registered owner of the federal trademark registration for the stylized "iD" logo (Reg. No. 5658672) for "Wholesale distributorships featuring automotive parts and accessories; retail store services featuring automotive parts and accessories; online retail store services featuring automotive parts and accessories." *See* Exhibit 6.



47.    Onyx owns the trademark registration for its newly-stylized iD® logo (Reg. No. 5804750), shown below, for "Distributorship services featuring parts and accessories for land vehicles and water vehicles; Distributorship services featuring goods for travel and outdoor recreational activities; Distributorship services featuring tools."



48.    This application received no opposition and was registered on the Principal Register on July 16, 2019.  Onyx has been using this newly stylized iD® logo in some version in connection with its multiple retail platforms since at least 2013.

49.    Onyx is further the registered owner of the federal trademark, wordmark, and registration for CARiD® (Reg. No. 3711746) for "Wholesale distributorships featuring automotive accessories; retail store services featuring automotive accessories; online retail store services featuring automotive

accessories." Onyx has been consistently using this trademark in connection with its eCommerce platform since at least 2008.

50.     Registration No. 3711746 is "incontestable" under § 15 U.S.C. § 1065, and thereby is conclusive evidence of the validity of the registered mark and of Onyx's ownership of the mark.

51.     Onyx owns U.S. Trademark Registrations and pending U.S Trademark Applications for the following marks, copies of which are attached as Exhibit 6:

| MARK | Reg./Ser. No. | Goods & Services |
|---|---|---|
| CARID | Reg. No. 3711746 | IC 035: Wholesale distributorships featuring automotive accessories; retail store services featuring automotive accessories; online retail store services featuring automotive accessories. (Date of First Use: at least as early as March 10, 2009) |
|  | Reg. No. 5804750 | IC 035: Distributorship services featuring parts and accessories for land vehicles and water vehicles; Distributorship services featuring goods for travel and outdoor recreational activities; Distributorship services featuring tools. (Date of First Use: at least as early as June 1, 2018) |
|  | Reg. No. 5658672 | IC 035: Wholesale distributorships featuring automotive parts and accessories; retail store services featuring automotive parts and accessories; online retail store services featuring automotive parts and accessories. (Date of First Use: at least as early as September 1, 2013) |

| | | |
|---|---|---|
| **iD** | Ser. No. 87412406 | IC 002: Sealer coatings for use in the sealing of vehicle parts and during vehicle repairs; coatings for industrial purposes, namely, paints, aerosol paints, rust treatment coatings, undercoats in the nature of industrial sealants for waterproofing and surface hardening, insulation coatings, and rubberized coatings in the nature of industrial sealants for waterproofing and surface hardening; anti-corrosive oils<br><br>IC 003: Chemical cleaners directed to the vehicle industries; windshield washing fluid; vehicle and car wax preparations<br><br>IC 004: Motor vehicle lubricants; Rust penetrant lubricants for vehicle exhaust systems, for hood release cables, for nuts and bolts, for shock absorbers, and other clips and cables of vehicles; penetrating oil; vehicle lubricants; vehicle lubricating greases; lubricating oils; automotive lubricants<br><br>IC 007: Vehicle equipment, namely, engine mufflers, spark plugs, gaskets, and chucks for power-operated drills; metal engine gaskets for vehicles<br><br>IC 009: Batteries for motor vehicles; battery maintenance equipment, namely, cables, lugs, connectors, terminals, hardware, protectors, cable assemblies, bolts, and booster cables; battery chargers for motor vehicles |

| | | |
|---|---|---|
| | | IC 012: ATVs (all terrain vehicles); automobiles and structural parts therefor; brake discs for motorcycles; motor scooters and structural parts therefor; motorcycle drive chains ; motorcycle foot pegs; motorcycle sprockets; motorcycles and structural parts therefor; motorized bicycles; motorized dirt bikes for motocross and dune buggies; motorized vehicles, namely, go-carts; parts of motorcycles, namely, brake cables; parts of motorcycles, namely, brake calipers; parts of motorcycles, namely, brake levers; parts of motorcycles, namely, brake master cylinder assemblies; parts of motorcycles, namely, brake rotors; parts of motorcycles, namely, clutch cables; parts of motorcycles, namely, clutch master cylinder assemblies; parts of motorcycles, namely, handle bar grips; parts of motorcycles, namely, handle bar throttles; parts of motorcycles, namely, handle bar grips; parts of motorcycles, namely, handle bars; parts of motorcycles, namely, master cylinders; parts of motorcycles, namely, shift levers; parts of motorcycles, namely, brake master cylinder assemblies; parts of motorcycles, namely, clutch master cylinder assemblies; vehicle parts, namely, rearview mirrors; push scooters and structural parts therefor<br><br>IC 025: Clothing, namely, t-shirts, sweatshirts, headwear and footwear |
| BOATiD | Reg. No. 5888908 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories for boats and water |

| | | |
|---|---|---|
| | | vehicles, boat safety, and boat maintenance; computerized online ordering featuring general merchandise and general consumer goods for boats and water vehicles, boat safety, and boat maintenance |
| CAMPERiD | Reg No. 58889090 | IC 035: Online retail store services in the field of outdoor consumer products, equipment, parts and accessories used with, or in association with, recreation vehicles, campers, cooking, towing, and other outdoor recreational activities; Online retail store services in the field of general merchandise and general consumer goods used for outdoor recreational activities |
| MOTORCYCLEiD | Reg. No. 5787890 | IC 035: Online retail store services featuring consumer products, electronics, apparel, protective wear, parts and accessories for motorcycles, dirt bikes, motocross bikes, scooters, and three-wheel bikes; computerized online ordering featuring general merchandise and general consumer goods including those used with motorcycles, dirt bikes, motocross bikes, scooters, and three-wheel bikes (Date of First Use: at least as early as July 1, 2018) |
| POWERSPORTSiD | Reg. No. 5787889 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories for powersports, namely, boating, snowmobiling, motorcycling, utility terrain vehicles, watercrafts, off-road vehicles, and all-terrain vehicles; computerized online ordering featuring general merchandise |

|  |  | and general consumer goods including those used in support of powersports (Date of First Use: at least as early as July 1, 2018) |
|---|---|---|
| RACINGiD | Ser. No. 88303678 | IC 035: On-line retail store services featuring a wide variety of consumer goods of others; Online retail store services featuring consumer products, electronics, parts and accessories for land and water vehicles used for racing or high performance travel; Computerized online ordering featuring general consumer merchandise |
| RECREATIONiD | Reg. No. 5888910 | IC 035: Online retail store services in the field of consumer products, shoes, electronics, equipment, parts and accessories used with, or in association with, walking, camping, backpacking, hiking, tailgating, cooking, hunting, fishing, biking, towing, and other outdoor recreational activities; Online retail store services in the field of general merchandise and general consumer goods used for outdoor recreational activities |
| STREETiD | Reg. No. 5850420 | IC 035: On-line retail store services featuring a wide variety of consumer goods of others. |
| TOOLSiD | Reg. No. 5888911 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories associated with tools, namely, power tools, hand tools, lawn and garden tools, air tools, automotive tools, and construction tools; Online retail store services in the field of |

|  |  | general merchandise and general consumer goods used for or with tools |
|---|---|---|
| TRUCKiD | Reg. No. 5787891 | IC 035: Online retail store services in the field of electronics, consumer products, parts and accessories directed to, or used in association with, trucks, semi-trucks, semi-tractor trailers, fifth wheels, trailers and towing; computerized online ordering featuring general merchandise and general consumer goods for those in the field of trucks, semi-trucks, semi-tractor trailers, fifth wheels, trailers and towing<br>(Date of First Use: at least as early as July 1, 2018) |

52.    The various iD® brands of Onyx have become distinctive and well-known in the industry as a symbol of its goodwill with manufacturers, distributors, resellers, industry publications, and consumers of vehicle parts and accessories. The breadth and scope of Onyx's offerings is extensive, and many of the parts comprising a vehicle could be purchased through the platform. As a result, its stylized iD® Mark has become famous and a strong indicator of source and affiliation.

53.    Onyx also owns valid and subsisting common law rights in the marks depicted below, which Onyx has continuously used in interstate commerce for many years:





54.    Onyx has also enforced its intellectual property rights to ensure the

integrity and strength of its iD® Brands.  Apart from informal enforcement, Onyx

has taken steps to protect the ID Brand in the following actions:

a.    *Onyx Enters. Int'l, Corp. v. Guangzhou Zezhong Elecs. Co., Ltd.*, No.

1:18-cv-03226 (D. Colo. filed Dec. 14, 2018).

b.    *Onyx Enters. Int'l, Corp. v. Sloan Int'l Holdings Corp.*, No. 0:20-cv-

60871-RKA (S.D. Fla. filed Apr. 29, 2020).

c.  *Onyx Enters. Int'l, Corp. v. ID Parts, Inc.*, No. 1:20-cv-11253 (D.

Mass. filed June 30, 2020).

d.  *Onyx Enters. Int'l, Corp. v. ID Auto, LLC*, No. 1:20-cv-05022

(S.D.N.Y. filed June 30, 2020).

e.  *Onyx Enters. Int'l, Corp. v. KhodroID*, No. 2:20-cv-08179 (D.N.J.

filed July 2, 2020).

## **VW's INFRINGING CONDUCT.**

55.  VW is the largest automotive products manufacturer in the world. Over

the past several years, VW has sold millions of cars with the VW Golf leading the

way, averaging as much as 1 million cars sold in 2017:



56.  VW announced that it will begin selling electric cars sales in 2020 and

that they are likely VW's future.

57.     VW refers to its electric line of cars as being its "third wave of innovation" following the success of the VW Bug in the 1950s and the VW Golf in the 1970s.  VW has announced that it will name its first production electric car "ID.3" in tribute to this third wave of VW innovation.



58.     As of August 2020, VW's line of electric cars remains in concept phase.



*(Screen shot taken August 31, 2020)*

31

59.   A production version of the VW electric line of cars has not yet been released in the United States nor have production models been imported into the United States.

60.   Without regard for Onyx, VW still has decided to label this suite of automotive vehicles, parts, accessories, fittings, and associated services with the house mark "ID."

 

61.   Injunctive relief is here required to protect Onyx and equitable as VW has not yet even launched its new line of products.

62.   The irreparable impact on Onyx caused by the massive injection of ID branded products and services into the automotive industry, as detailed below, can only be remedied by an injunction entered before the launch of VW's new electric products.

63.   Permitting the launch in favor of requiring Onyx to prove monetary harm is inequitable.   The damages caused by this launch will be enormous and

32

ultimately unable to restore Onyx to its current position and trajectory in the automotive industry.

64.     The cost of a rebrand to VW will be nominal relative to the harm caused to Onyx having to compete with the new ID economy VW seeks to create and that will emerge, grow, and overtake Onyx in the automotive industry.

65.     In December of 2019, VW announced that the ID Family of electric vehicles will lead its electric offensive in 2020 and beyond.  VW set ambitious sales goals, with as many as 1 million cars sold by 2023 and 1.5 million ID cars sold annually by 2025.  The following is from VW's press release dated December 27, 2019:

> "Volkswagen's electric offensive has picked up speed as planned. With the world premiere of the new all-electric ID.3 in September and the start of production at the Zwickau electric vehicle plant in November, the Volkswagen brand has already reached major milestones. ***2020 will be dominated by the market introduction of the ID. family.*** The first ID.3 cars will appear on Europe's roads in the summer. Over the next few years, Volkswagen intends to become the world market leader in e-mobility and is investing €33 billion in these efforts throughout the group by 2024, including €11 billion in the Volkswagen brand. Under the latest plans, the strategic target of one million electric cars is expected to be reached end of 2023, two years earlier than previously predicted. The Volkswagen brand expects 1.5 million electric cars to be produced in 2025.

33

> "2020 will be a key year for the transformation of Volkswagen.
> With the market launch of the ID.3 and other attractive models in
> the ID. family, our electric offensive will also become visible on
> the roads", says Thomas Ulbrich, Member of the Volkswagen
> brand Board of Management responsible for E-Mobility. "Our
> new overall plan for 1.5 electric cars in 2025 shows that people
> want climate-friendly individual mobility – and we are making it
> affordable for millions of people."

*See* Exhibit 7, Press Release, VW, Volkswagen significantly raises electric car production forecast for 2025 (Dec. 27, 2019) (emphasis added).

66.    VW's goal of selling 1.5 million electric cars in 2025 exceeds VW's sales performance on the VW Golf, its leading model prior to the launch of VW's ID Family of cars, products, and services.   VW's sales goal is backed by a commitment to spend €11 billion in support of this new VW brand.

67.    By these commitments, VW intends for ID branded products to serve as its most successful line of products and services in its history.

## VW'S ATTEMPTS TO TRADEMARK "ID" FOR THE SALE OF AUTOMOTIVE PRODUCTS.

68.    VW has been advised by both the USPTO and Onyx that it cannot use ID for its new line of automotive products and services.

69.    VW twice attempted to register "ID" as its house mark for its electric line of cars.

70.     USPTO refused, suspending applications to register "I.D." and "ID.", finding that VW's proposed usage would conflict with Onyx's ID® house mark and would likely create consumer confusion.

71.     On December 21, 2016, VW filed a trademark application seeking to register "I.D." under VW's Application Serial No. 79217568.  In this application, VW sought to apply the "I.D." Mark to products and services that directly compete with Onyx or in a fashion that would create a likelihood of confusion in the marketplace regarding the source of the products and services bearing VW's proposed "I.D." Mark.

72.     VW sought to register "I.D." to cover "[r]etail and wholesale store services featuring motor vehicles and their parts and fittings; retail and wholesale mail-order services featuring motor vehicles and their parts and fittings" in class 35.

73.     On October 17, 2017, VW was advised by the USPTO that its application "may be refused from registration because of a likelihood of confusion between" US. Application Serial Nos. 86253327 and 86414309.

74.     Blocking Application Serial No. 86253327 was filed by Onyx with the description: "Wholesale distributorships featuring automotive parts and accessories; retail store services featuring automotive parts and accessories; online retail store services featuring automotive parts and accessories."  This Application Serial No. ultimately issued as U.S. Registration No. 5658672 and is for the following mark:

35



75.    The second blocking application, Application Serial No. 86414309, was filed by ID Parts, LLC for an "id" mark for the "online retail and wholesale store services featuring auto parts."  On July 21, 2019, Application Serial No. 86414309 was refused "because of the likelihood of confusion with the mark in U.S. Registration No. 5658672", or Onyx's ID® brand.  Onyx has since sued ID Parts to cause it to cease the use of this mark.

76.    On January 23, 2018, the USPTO suspended VW's application for "I.D." as Onyx's Application Serial No. 86253327 was still pending registration and because VW's application may be refused due to a likelihood of confusion with Onyx's mark when registered.  VW was advised that its application would be suspended until such time as Onyx Application Serial No. 86253327 is registered.

77.    Onyx Application Serial No. 86253327 registered on January 22, 2019 as U.S. Registration No. 5658672 and VW's Application Serial No. 79217568 for "I.D." remains suspended.

78.    On May 7, 2018, VW filed a second trademark application seeking to register "ID." under Application Serial No. 79248267.  Apparently to differentiate

from VW's suspended Application Serial No. 79217568, VW dropped the "."
between the letters "I" and "D".

79.    VW's Application Serial No. 79248267 sought to register "ID." for the
sale of products and services that directly compete with Onyx or in a fashion that
would create a likelihood of confusion in the marketplace regarding the source of
the products and services bearing VW's proposed "ID." Mark.

80.    On January 4, 2019, VW's Application Serial No. 79248267 received
a full refusal due to the likelihood of confusion with a series of prior ID Marks,
including Onyx's ID marks.

81.    On August 23, 2019, VW's Application Serial No. 79248267 was again
refused because of a likelihood of confusion with the marks in U.S. Registration
Nos. 5129458, 5129459, 5129460, and 5658672.  Specifically, as it relates to Onyx's
U.S. Registration No. 5658672, the USPTO found:

> *In the present case, applicant's services directly overlap with*
> *and/or are closely related to Reg. No's. 5658672 services.*
> *Specifically, both entities provide retail of automotive parts,*
> *and an entity that provides automobiles and vehicle repair*
> *services, like the applicant, also routinely provides retail of*
> *automotive parts, among others, like the registrant, under the*
> *same mark. The attached Internet evidence from ford.com,*
> *gmc.com, and toyota.com establishes that the same entity*
> *commonly manufactures/produces/provides the relevant*
> *goods and/or services and markets the goods and/or services*
> *under the same mark and that the relevant goods and/or*
> *services are sold or provided through the same trade*
> *channels and used by the same classes of consumers in the*
> *same fields of use. Thus, applicant's and registrant's goods*

37

> *and/or services are considered related for likelihood of confusion purposes. <u>See, e.g.</u>, <u>In re Davey Prods. Pty Ltd.</u>, 92 USPQ2d 1198, 1202-04 (TTAB 2009); <u>In re Toshiba Med. Sys. Corp.</u>, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).*

82.     Onyx's use of the ID® Mark predates U.S. Registration Nos. 5129458, 5129459, and 5129460.

83.     Volkswagen does not sell direct to customers.  Volkswagen sells both its automobiles and its products through dealerships and third party vendors, such as Onyx. Since at least 2009, Onyx has sold VW parts and accessories for each make, model, and year of VW banded cars:



***(Screenshot from The Way Back Machine, December 2009)***

84.     On February 24, 2020, Onyx advised VW that it would not consent to VW's use of ID.  *See* Exhibit 3.

85.   The same day, VW filed a Response to Office Action with the Trademark Examiner that rejected VW's Application Serial No. 79248267 on August 23, 2019.  Referencing Onyx, VW acknowledged on page 10 of its February 24, 2020 Response Brief that "there appears to be some 'overlap' in the services offered by each party."  *See* Exhibit 8, Response to Office Action, February 24, 2020, pg. 20.  VW then states that "there is a very small likelihood that the consumers of the respective services would ever be contemporaneously exposed to the respective marks within a similar situation."  *Id.* VW's argument, however, is directly contrary to the position VW has taken in trademark lawsuits it has filed against eCommerce retailers for use of names that VW viewed as being confusingly similar to those owned by VW, as discussed at ¶¶ 139-148. Despite taking these contradictory positions in Federal Court, VW did not bother to tell the USPTO about them in their briefing. *See id*.

86.   VW did acknowledge that its "customers include individuals who are interested in purchasing a part or accessory online . . . ."  *Id.*

87.   Two days later, the USPTO suspended VW's second attempt to trademark "ID." stating:

> *In the present case, applicant's goods and/or services are closely*
> *related to Reg. No's. 5658672 services.  Specifically, an entity*
> *that provides automobiles, engines for land vehicles,*
> *reconstruction in the nature of custom rebuilding, repair,*
> *dismantling and maintenance of vehicles provided as part of*
> *vehicle breakdown repair services, vehicle cleaning, and*

39

> *servicing, namely, repairing, washing and polishing, and varnishing of vehicles like the applicant, also routinely provides "wholesale distributorships featuring automotive parts and accessories; retail store services featuring automotive parts and accessories [and] online retail store services featuring automotive parts and accessories" like the registrant. See previously attached Internet evidence from ford.com, gmc.com, and toyota.com establishing that the same entity commonly manufactures, produces, or provides the relevant goods and/or services and markets the goods and/or services under the same mark and that the relevant goods and/or services are sold or provided through the same trade channels and used by the same classes of consumers in the same fields of use. Thus, applicant's and registrant's goods and/or services are considered related for likelihood of confusion purposes. See, e.g., In re Davey Prods. Pty Ltd., 92 USPQ2d 1198, 1202-04 (TTAB 2009); In re Toshiba Med. Sys. Corp., 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).*

*See* Exhibit 9, USPTO Suspension Letter, pg. 3.

88.     After rejection and suspension of VW's "I.D." application, VW proceeded to file a series of trademark applications for sub-brands of the VW's ID automotive line of automotive products.   See Exhibit 10, Chronological VW trademark applications for iterations of "ID."  Each sub-brand application is directed toward retail and wholesale distribution of automotive products including parts and accessories that make up an ID branded vehicle.

89.     The VW sub-brand applications demonstrate the true breadth of coverage to which VW intends to extend the ID brand.  Just as "I.D." and "ID.", each of the following applications extend to automotive parts and accessories as well

as retail store services and wholesale store services featuring motor vehicles; retail store services and wholesale store services for as many as 15 ID sub-brands.

| Mark | | Date Filed | Registered /Status | Claimed Priority | Exhibit 10 |
|---|---|---|---|---|---|
| ID. NEO | Reg. No. 5688385 | August 14, 2018 | March 5, 2019 | Feb. 2018 | p.52 |
| ID.1 | Reg. No. 5917404 | December 21, 2018 | November 26, 2019 | July 3, 2018 | p. 58 |
| ID.2 | Reg. No. 5917405 | December 21, 2018 | November 26, 2019 | July 3, 2018 | p. 67 |
| ID.3 | Reg No. 5940895 | December 21, 2018 | December 24, 2019 | July 3, 2018 | p. 76 |
| ID.4 | Reg. No. 5940891 | December 21, 2018 | December 24, 2019 | July 3, 2018 | p. 85 |
| ID.5 | Reg. No. 5917406 | December 21, 2018 | November 25, 2019 | July 3, 2018 | p. 94 |
| ID.6 | Reg. No. 5917407 | December 21, 2018 | November 26, 2019 | July 3, 2018 | p.103 |
| ID.7 | Reg. No. 5917408 | December 21, 2018 | November 26, 2019 | July 3, 2018 | p. 112 |
| ID.8 | Serial No. 79260032 | December 21, 2018 | Pending | July 3, 2018 | p. 121 |
| ID.9 | Reg. No. 5917409 | December 21, 2018 | November 26, 2019 | July 3, 2018 | p. 128 |
| ID. R | Reg. No. 6055588 | May 14, 2019 | May 19, 2020 | December 12, 2018 | p. 137 |
| ID. Light | Serial No. 79264200 | June 4, 2019 | Rejected. Request for reconsider | December 6, 2018 | p. 144 |

| | | | ation filed in June. | | |
|---|---|---|---|---|---|
| ID.Buggy | Reg. No. 5955688 | August 8, 2019 | January 7, 2020 | April 16, 2019 | p. 153 |
| ID. Roomzz | Serial No. 79272881 | August 21, 2019 | Pending | March 13, 2019 | p. 162 |
| ID.4 X | Serial No. 79285413 | November 15, 2019 | Rejected | 1(b) | p. 168 |
| ID.5 X | Serial No. 79285402 | November 15, 2019 | Rejected | 1(b) | p. 185 |
| ID.6 X | Serial No. 79285405 | November 15, 2019 | Rejected | 1(b) | p. 205 |

90.     Following the rejection and suspension of VW's "ID." Mark, VW proceeded to file two more trademarks directed at the sale of products and services identical to those offered by Onyx under the ID and CARiD brands:

   a.  IDEACY, Application Serial No. 88826384, filed March 9, 2020 with a priority date of February 19, 2020.  Exhibit 10, p. 308.

   b.  CARIAD, Application Serial No. 88826533, filed March 9, 2020 with a priority date of February 19, 2020.  Exhibit 10, pp 223 – 228.

   c.  VW's application for CARIAD and IDEACY are identical and overlap directly with Onyx's registrations for ID and CARID.

91.    VW's application for CARIAD is both peculiar and predatory. By March of 2020, Onyx had advised VW regarding its ownership of CARiD® and that it was unwilling to license any of its iD® marks.  *See* Exhibit 3.  In response to Onyx's letter declining to license the ID® house mark, VW took the predatory step of attempting to register the below mark.  See Exhibit 10, pp 223 -228.

| Onyx's Reg. No. 3711746<br>Filed April 21, 2009<br>Exhibit 6, p. 1. | VW's Serial No. 88826533<br>Filed March 9, 2020<br>Exhibit 10, pp 223-228 |
|---|---|
| CARID | CARIAD |
| Date of First Use: 03/10/2009<br><br>IC 035. US 100 101 102. G & S: Wholesale distributorships featuring automotive accessories; retail store services featuring automotive accessories; online retail store services featuring automotive accessories. FIRST USE: 20090310. FIRST USE IN COMMERCE: 20090310 | Priority Claim: February 19, 2020<br>IC 012. US 019 021 023 031 035 044.<br>G & S: Vehicles and conveyances; Vehicles for locomotion by land, air, water or rail and their parts; Motor land vehicles; Driverless cars; Powertrains, including engines and motors, for land vehicles; Propulsion mechanisms for land vehicles; Chassis for vehicles; Vehicle bodies; Vehicle couplings; Shock absorbers for vehicles; Shock absorbing springs for vehicles; Pneumatic tyres; Tyres for vehicle wheels; Rims for vehicle wheels; Solid rubber tyres for vehicle wheels; Vehicle wheels; Hubs for vehicle wheels; Lug nuts for vehicle wheels; Inner tubes for pneumatic tyres; Casings for pneumatic tyres; Tyre mousse inserts; Repair outfits for inner tubes, adhesive rubber patches for repairing inner tubes; Spikes |

| | for tyres; Tire snow chains; Non-skid devices for vehicle tyres; Vehicle seats; Rearview mirrors; Head-rests for vehicle seats; Security systems for vehicles, Anti-theft devices for vehicles; Cigar lighters for automobiles; Automotive vehicles; Cars; Robotic cars; Motor racing cars; Vans; Trailers and semi-trailers for vehicles; Trailer hitches for vehicles; Omnibuses; Motorcycles; Mopeds; Bicycles; Electric bicycles; Camera drones; Helicams; Cable transport apparatus and installations; Carts, Shopping trolleys, luggage carts; Aircrafts; Boats, Ships; Locomotives; Motor buses; Caravans; Tractors; Two-wheeled vehicles, Scooters; Self-balancing boards; Self-balancing electric unicycles; Self-balancing one-wheeled electric scooters; Chairlifts, cableways; Wheelchairs; Clips adapted for fastening automobile parts to automobile bodies; Tumbler holders adapted for use in motor vehicles; Parts and accessories for all the above mentioned goods, included in this class |
|---|---|

92.     On May 30, 2020, the USPTO once again rejected VW's attempt to register a trademark that is confusingly similar to a trademark registered to Onyx. See Exhibit 10, p 235.  This time, the USPTO relied exclusively on Onyx's Reg. No. 3711746 for CARID to reject VW's attempt to register CARIAD, stating: "Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 3711746." *See* Exhibit 10, p 237.  In rejecting

CARIAD, the USPTO provides further support for the notion that VW cannot utilize

marks that are confusingly similar to Onyx's mark:

"Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the " *du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

**Comparison of Marks**

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In*

*re Inn at St. John's, LLC* , 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

Here, the applied-for mark is CARIAD, while the registered mark is CARID.

The marks are essentially phonetic equivalents and thus sound similar. Similarity in sound alone may be sufficient to support a finding that the marks are confusingly similar. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1st USA Realty Prof'ls, Inc.* , 84 USPQ2d 1581, 1586 (TTAB 2007); TMEP §1207.01(b)(iv).

In sum, given the highly similar appearance, meaning, connotation, and commercial impression of the registered and applied-for marks it follows that consumers will confuse the marks.

**Comparison of Goods/Services**

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi). The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

. . . .

The registrant's services are "Wholesale distributorships featuring automotive accessories; retail store services featuring automotive accessories; online retail store services featuring automotive accessories."

The attached Internet evidence establishes that the same entity commonly manufactures, produces, or provides the relevant goods and/or services and markets the goods and/or services under the same mark

> *Ford*, who provides store services featuring automotive accessories, Vehicles and conveyances and their parts, repair, disassembly, maintenance and care of vehicles

> *Subaru*, who provides store services featuring automotive accessories, Vehicles and conveyances and their parts, repair, disassembly, maintenance and care of vehicles

> *Chevrolet*, who provides store services featuring automotive accessories, Vehicles and conveyances and their parts, repair, disassembly, maintenance and care of vehicles.

Thus, applicant's and registrant's goods and/or services are considered related for likelihood of confusion purposes. *See, e.g.*, *In re Davey Prods. Pty Ltd.*, 92 USPQ2d 1198, 1202-04 (TTAB 2009); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1268-69, 1271-72 (TTAB 2009).

In total, the registered marks and the applied-for mark create the same commercial impression and the evidence shows that the goods and services are likely to be encountered together in the marketplace by the same consumers. Thus, consumers are likely to make the mistaken conclusion that the goods and services originate from the same source. Therefore, a likelihood of confusion exists and registration is refused under Trademark Act Section 2(d)."

*See* Exhibit 10, pp 237-238.

93.    Continued use of ID in any form is willful infringement warranting injunctive relief.

**DESPITE WARNING, VW PROCEEDS TOWARD**

47

## **LAUNCH OF THE VW ID BRAND.**

94.     Despite receiving clear instruction from the USPTO that the ID mark for use on automobiles and related goods and services is confusingly similar to the Onyx ID® house mark, VW refused to rebrand.

95.     In February of 2020, Onyx advised that it would not license the ID mark and asked that VW rebrand.

96.     On April 24, 2020, VW counsel sent letter to Onyx declaring its intent to proceed with the use of ID.  In  the April 24, 2020 letter, VW relied upon the very arguments that it asserted in its February 24, 2020 Response Brief.  *Compare* Exhibit 11 *with* Exhibit 8, pp 17-23.

97.     The Trademark Office rejected VW's arguments in favor of registration on February 26, 2020 and again, in association with CARIAD, on May 30, 2020.

98.     Despite these persistent rejections by the USPTO and Onyx's consistent position that it will not license its trademark portfolio, VW advised Onyx in June that it would not even consider rebranding the electric automotive line despite the consistent and persistent rulings from the USPTO.

99.     In July of 2020, VW announced that its first ID branded car would be "ID.4" and that it would be imported into the United States in the fourth quarter of 2020.



**Happiness is a renewable resource.**

With high-performing anticipated top track speeds ⊕ and lightning-fast
DC Fast Charging ⊕, the ID.4 concept vehicle, expected to hit dealerships
by the end of 2020, will excite all your electrons.

The sleek, sculpted lines and exterior
styling of the ID.4 concept vehicle draw
you in for a closer look. And since you're
close, get inside, and preview future
concept interior features like the
infotainment tablet, driver-centric cabin,
and more.

**Read more in Newsroom**

Concept vehicle shown. Not available for sale. Specifications may change.

*(Screen Shot from https://www.vw.com/electric-concepts/section/overview/
taken July 7, 2020)*

**IF PERMITTED TO LAUNCH, VW WILL CAUSE THE
EMERGENCE OF A VW ID ECONOMY THAT WILL
UNLAWFULLY AND IRREPARABLY CRUSH ONYX'S RIGHTS,
GOODWILL AND MOMENTUM IN THE AUTOMOTIVE INDUSTRY.**

100.   Upon release of the first ID car to be offered by VW later in 2020, a
VW ID economy will emerge around the globe for the sale of original equipment
and aftermarket parts specifically branded as "ID" or marketed to work with "ID."

101.   Upon VW's launch of the VW ID brand, VW will unlawfully cause
Onyx to lose all control over how its house mark is used, and it will lose the goodwill
that it has cultivated within the automotive industry, backed by hundreds of millions
of dollars of investment in technology and marketing.

102.   The VW ID economy will be supported by VW, 650 VW authorized dealerships, and automotive aftermarket manufacturers seeking to feed the enthusiasm for the VW ID Family of electric automobiles.

103.   In addition to ID Branded cars, VW will sell ID branded car parts, fittings, and accessories, otherwise known as VW ID Original Equipment parts through its authorized dealerships.  VW does not sell direct to consumer, but rather relies upon the additional marketing efforts of its 650 authorized dealerships to advance the VW ID brand for cars and car parts, accessories and fittings.



104.   In the above photo, a VW Golf has been deconstructed to demonstrate each of the VW OE parts that make up a VW Golf.  In an illustrative way, these are the VW parts that VW dealerships sell to consumers for all VW brands, including VW ID once launched.

105.   Today, VW Golf parts and fittings are branded as VW "Golf" parts and fittings for sale through retailers, distributors, wholesalers, and dealerships ("Distribution Channels"), such as:

      a.   Onyx Enterprises Int'l Corp

      b.   AutoZone

      c.   Advance Auto Parts

      d.   O'Reilly Auto Parts

      e.   Napa Online

      f.   Pep Boys

      g.   JC Whitney

      h.   Car Parts, LLC

      i.   Auto Anything

      j.   VW authorized dealerships

      k.   VW authorized parts distributors

106.   Apart from the market for OE parts, the automotive aftermarket is a robust and diverse collection of companies that design, test, manufacture and import car parts, accessories, and fittings to work with automobiles sold by the OE manufacturers such as VW.

107.   The Specialty Equipment Market Association, otherwise known as SEMA, is the leading trade organization supporting the automotive aftermarket.   In its words, the automotive aftermarket as follows:

<table>
<tr>
<td>

*A love for cars, trucks and SUVs is the motivating force behind the Specialty Equipment Market Association (SEMA). This trade association consists of a diverse group of manufacturers, distributors, retailers, publishing companies, auto restorers, street-rod builders, restylers, car clubs, race teams and more.*

*SEMA members make, buy, sell and use all kinds of specialty parts and accessories to make vehicles more attractive, more unique, more convenient, faster, safer, more fun and even like-new again.*

*The companies that founded SEMA—and the entire specialty parts and accessories industry, for that matter—were started by people who loved cars and trucks and turned their hobby into a career. Most people in the industry today still feel this way. That's one of the things that makes SEMA and its members unique.*

</td>
<td>



</td>
</tr>
</table>

*See* About SEMA, Specialty Equipment Market Association *available at*

www.sema.org/about-sema.

108.   According to the 2019 SEMA Market Report, the United States automotive aftermarket grew to $44 billion in revenue in 2018.   *See* Exhibit 12, SEMA Market Report, Documenting the Growth of an Industry, 2019.



109.   SEMA hosts one of the largest automotive industry trade show each November in Las Vegas.  The SEMA Show is closed the public, such that only SEMA members (such as VW) and industry insiders may attend.  In 2018, over 160,000 aftermarket insiders attended the show, including VW:



110.   In 2019, VW maintained its own booth at the SEMA Show for purposes of displaying its vehicles, parts, and accessories.  Three new models were on display: the VW Atlas Basecamp, the VW Atlas Concept by Thule, and the VW Jetta GLI.

111.   VW did not show a VW ID concept or production vehicle at the 2019 SEMA Auto Show.

112.   Aftermarket companies work to offer new accessories for a particular branded vehicle, or they look to modify, improve, or replace OE parts with improved aftermarket parts.

113.   For decades, a large number of aftermarket companies have fed VW enthusiasts with aftermarket parts, fittings, and accessories specifically designed and branded to work with VW makes and models.

114.   Onyx, like all Distribution Channels, feature and sell OE and aftermarket parts specifically targeting particular VW makes and models.   For example, one can isolate 1000's of products on www.CARiD.com that are specifically branded for use with the 2020 VW Golf:



*See* Exhibit 13, VW Golf GTI Accessories & Parts page on www.carid.com.

115.   Vehicle Make/Model/Year or "MMY" specific sections are standard on all eCommerce sites.  Onyx and its competitors provide the consumer feature MMY sections for each VW vehicle.

116.   As the VW ID has not yet been launched in the United States, neither Onyx nor the Distributions Channels for VW parts, accessories and fittings have

included the VW ID family of automobiles on their platforms.  The following screen

shots were collected on June 15, 2020:



| | |
|---|---|
| [www.advanceautoparts.com](www.advanceautoparts.com) |  |
| [www.carid.com](www.carid.com) | |

www.jcwhitney.com



117.   Once VW releases VW ID cars for sale, VW will also release a large number of ID Branded OE products that will be sold in support of VW ID automobiles through the Distribution Channels, which includes Onyx.

118.   While the list of OE products will be different from the VW Golf depicted above, VW's trademark applications confirm that VW will apply the "ID" trademark to automotive "parts and fittings" and "structural parts and accessories" of ID cars.   *See* Exhibit 10, Applications for I.D., ID., I.D. Crozz, ID.1, ID.2, ID.3, ID.4, ID.5, ID.6, ID.7, ID.8, ID.9, ID.R, ID.Light and ID.Roomzz, pp 2, 15, 59, 68, 77, 86, 95, 104, 113, 122, 129, 144, 163.

119. For example, VW filed 10 applications with the USPTO seeking to apply the VW ID brand to the products that, upon information, appear on the Bill of Materials for VW ID vehicles:

| ID. | Recorded content, namely, pre-recorded flash drives, digital video discs, featuring vehicle information; navigation, guidance, tracking, targeting and map making devices, namely, GPS navigation device, GPS receivers; measuring, detecting and monitoring instruments, indicators and controllers, namely, speed indicators; simulators, namely, vehicle drive training simulators; vehicle breakdown warning triangles; vehicle breakdown warning lamps other than parts of vehicles; electric batteries and their replacement and structural parts for vehicles, electric accumulators and their replacement and structural parts for vehicles, fuel cells and their replacement and structural parts, for vehicles, electric batteries for vehicles; electric accumulators for vehicles; chargers for electric batteries for vehicles, all of the aforementioned goods not related to batteries and battery chargers for use in connection with remote controlled scaled model vehicles; solar batteries; burglar alarm; electronic lighting control panels for vehicle headlights and their replacement and structural parts and power and voltage supply units, namely, power controller, voltage stabilizers for vehicle headlights and their replacement and structural parts; simulators for the steering and control of vehicles; voltage regulators for vehicles; remote control starters for vehicles; navigation systems, namely, satellite-aided navigation systems, global positioning system (GPS); navigational instruments systems, namely, electric navigational instruments, car navigation computers; satellite and microwave communications apparatus to transmit communications from a vehicle to another vehicle; pre-recorded magnetic data carriers featuring vehicle information; pre-recorded magnetic data carriers featuring vehicle information; pre-recorded DVDs featuring vehicle information; recorded computer program for use in autonomous driving of vehicles; recorded computer program for use autonomous navigation of vehicles; computer program for use autonomous control of vehicles; downloadable | Exhibit 10, p 40. |
| --- | --- | --- |

| | | |
|---|---|---|
| | manuals in the field of cars, batteries; none of the aforesaid goods in connection with rail vehicles | |
| ID.1<br>ID.2<br>ID.3<br>ID.4<br>ID.5<br>ID.6<br>ID.7<br>ID.8<br>ID.9<br>ID.4X<br>ID.5X<br>ID.6X | 009. US 021 023 026 036 038. G & S: Recorded content, namely, video recordings featuring automobiles; information technology equipment, namely, telephones; audiovisual equipment, namely, receivers; magnets; magnetizers and demagnetizers for magnetic tapes; apparatus for electricity, namely, transistors; instruments for electricity, namely, electric voltage transformers; cables for electricity; optical devices, enhancers and correctors, namely, optical condensers, binoculars, optical corrector lenses; safety, security, protection and signaling devices, namely, vehicle safety devices, namely, back-up sensors and cameras, LCD monitors for security purposes, eye covers for protective purposes, emergency warning lights; diving equipment, namely, scuba diving masks, weight belts for scuba diving, scuba snorkels, scuba goggles, regulators for use in scuba diving; navigation, guidance, tracking, targeting and map making devices, namely, navigation apparatus for vehicles, GPS navigation device; measuring, detecting and monitoring instruments, indicators and controllers, namely, instruments for detecting, monitoring and measuring two-dimensional distribution of force and pressure; measuring apparatus, namely, sizers for automobile parts; scientific research and laboratory apparatus, namely, centrifuges, homogenizers; laboratory equipment, namely, cupels; educational simulators, namely, simulators for driving or control of vehicles; scientific, nautical, surveying, photographic, cinematographic, electric weighing, measuring, signaling, checking and supervising, lifesaving apparatus and instruments, namely, spectrometers and parts and fittings therefor, navigation apparatus for boats, photographic flashbulbs, cinematographic projectors, weighing scales, rain gauges, electrical annunciators, apparatus for checking flight parameters, life-saving rafts; contact lenses; spectacles; spectacle cases; magnifying glasses; sunglasses; vehicle breakdown warning triangles; vehicle breakdown warning lamps other than parts of vehicles; electric batteries and replacement parts therefor; electric accumulators and replacement parts therefor; fuel cells and replacement parts | Exhibit 10, pp 59, 68, 77, 86, 95, 104, 113, 122 and 129, 168, 185. 205 |

therefor; solar batteries; electric batteries for vehicles; electric accumulators for vehicles; chargers for electric batteries; burglar alarms; fire alarms; smoke alarms; gas alarms; theft alarms; fire extinguishing apparatus; scales; spirit levels; compasses, namely, directional compasses; fuel gauges; measuring instruments in the nature of rulers; acid hydrometers; electronic controllers and power and voltage stabilizing supply units for vehicle headlights; light emitting diodes (LEDs); electronic power controllers; electrical and electronic controllers and instruments for controlling automobiles; simulators for the steering and control of vehicles; voltage regulators for vehicles; speed indicators; revolution counters, namely, tachometers; measuring apparatus and instruments, namely, distance measuring apparatus; life-saving apparatus and equipment, namely, life-saving rafts, fire escape ladders, safety nets, safety tarpaulins, life belts, life buoys and life jackets; electrical fuses; fuses for automobiles; electric relays; lasers not for medical purposes; laser pointers; electronic key fobs being remote control apparatus; aerials; navigation apparatus for vehicles, namely, onboard computers; mobile telephones; telephone apparatus; television apparatus, namely, television apparatus for projection purposes; video telephones; radios; satellite navigation systems, namely, global positioning systems (GPS) and satellite-aided navigation systems; electric navigational instruments; telematic apparatus, namely, GPS tracking devices for vehicles; telematics terminal apparatus, namely, wireless Internet devices for tracking vehicles; apparatus and instruments for conducting, switching, transforming, accumulating, regulating and controlling electricity, namely, semiconductor wafers, electric circuit switches, electrical transformers, electric accumulators, voltage regulators for electric power, electrical controllers; apparatus for recording, transmission and/or reproduction of sound and images; magnetic, electronic and optical data carriers, namely, hard disk drives, blank USB flash drives, blank optical data carriers and optical disks featuring music; phonograph records featuring music; blank audio video compact discs; audio-video compact discs featuring music; blank recordable DVDs; DVDs featuring vehicle safety information; digital recording apparatus, namely, digital voice recorders; sound carriers,

namely, audio speakers; coin operated jukeboxes; compact discs, namely, CD-ROMs featuring music; blank recordable compact discs; downloadable music files; audio headphones; loudspeakers and cabinets for loudspeakers; illuminated signs, namely, illuminated exit signs; compact disc players; DVD players; phototelegraphy apparatus; slide and photograph projection apparatus; exposed camera films; cinematographic cameras; photocopiers; computer-based electronic translation apparatus, namely, electronic pocket translators; encoded magnetic cards for use as electronic tickets; integrated circuit cards, namely, encoded smart cards containing programming used for controlling and operating vehicles; encoded telephone cards, namely, pre-paid telephone calling cards, magnetically encoded; mechanisms for coin-operated apparatus; automatic banking machines, namely, automated teller machines; cash registers; calculators; data processing apparatus; computers; electronic agendas, namely, calendars and organizers; facsimile apparatus; computer monitors; computer peripheral devices; recorded and downloadable computer software for use in database management and for use in the autonomous navigation of vehicles; computer application software for operating vehicles, namely, software for use in database management and for use in the autonomous navigation of vehicles; all the above goods are not related to video games; pocket calculators; downloadable electronic publications in the nature of magazines in the field of automobiles; downloadable image files containing images of automobiles; crash test dummies; microscopes; electric sockets, plugs and contacts; electric igniting apparatus for igniting at a distance, namely, keyless ignition switch system for automotive vehicles comprised of a microprocessor, electronic signal receiver, and key fob with electronic signal transponder; radioactivity measuring apparatus for industrial purposes; protective helmets; electric locks; electronic controllers and electronic control systems for controlling automobiles, engines and machines; none of the aforesaid goods in connection with rail vehicles

120.   VW also intends to extend the VW ID brand to "retail and wholesale store services for motor vehicles and their parts and fittings." *See* Applications for ID., I.D., I.D. CROZZ, ID.ROOMZ, ID. LIGHT and ID.R.

121.   Once VW releases the ID.3, ID.4, ID.Buzz, ID. Vizzon, or any of the other planned sub-brands, the automotive aftermarket will release parts and accessories that are specifically marketed and branded to work with ID.

122.   As of the filing of this complaint, VW has not released for sale the original equipment parts and fittings that comprise the planned VW ID cars.

123.   As of the filing of this complaint, the aftermarket has not started to offer ID branded products or accessories specifically marketed to VW ID owners.

124.    As VW ID cars, parts, accessories, and fittings are not yet available for sale, the leading Distribution Channels are not selling ID branded products.

125.   A search was run in June of 2020 on Onyx's top competitors to determine what parts or accessories are returned when a search is run for "ID", "ID Car", "ID parts" or "ID Accessories."

126.   For example, a search of www.AutoZone.com revealed the following results for ID branded products or products that contained ID in the description.

| AutoZone | |
|---|---|
| "ID" returned 3 results. |  |
| "ID Accessories" returned 1 result. | |
| "ID Parts" returned zero results. | |

| "ID Car" returned 16 results. |  |

127.    A similar search of www.AutoAnything.com reveals that one of Onyx's top competitors is not currently selling products or brands that contain "ID."



| | |
|---|---|
| "ID Accessories" returned no products. | |
| "ID Parts" returned no products. | |
| "ID Car" returned one accessory. | |



128.   The similar results were returned on sites such as www.pepboys.com, www.advanceautoparts.com, www.jcwhitney.com, www.jegs.com, and www.RockAuto.com.

129.   The results of these searches confirm that Onyx's competitors are not currently selling ID branded products.



130.   The results of these searches confirm that Onyx's competitors are not currently engaging in organic search optimization techniques that are driving consumers to their sites using the ID® brand.

131.   The results of these searches confirm that Onyx's competitors are not currently engaging in paid advertising or pay-for-click advertising techniques to drive consumers for automotive products to them using the ID® brand.

132.    Based upon the marketplace in June of 2020, the Onyx ID® house mark maintains exclusivity.

133.    Upon launch, VW and Onyx's competitors, including the Distribution Channels, will use "ID" to drive sales through their channels and away from Onyx.

134.    Upon launch, these competitors will market the sale of ID branded parts resulting in the widespread and industrywide campaign of developing both organic and paid search optimization techniques and related "ID" branded search terms, which will effectively cause the eradication of Onyx's ID Brand and replace it with the VW ID Brand.

135.    As depicted below, the Onyx ID® brand will be obscured or obliterated as the weight of the industry joins the effort to market the VW ID brand.  Only an injunction can prevent this result. There is no sum of money that Onyx can throw at marketing to unwind the below outcome.



## VW ID WILL BE THE VOICE AND PERSONALITY OF
## THE VW ELECTRIC CARS.

136.   VW's infringing use of ID will not be limited to branded automotive products and services.  Based upon VW's promotional materials, "ID" is a software personality, such as Amazon's "Alexa" or Apple's  "Siri."  The following is from a video posted on YouTube:



*See* "Volkswagen ID.3 - ID. Light and Hello ID.," YouTube, *available at* https://youtu.be/85GRvBCTudc.

137.   VW's intended use of "ID" will extend into all aspects of automotive life using the automobile as an anchor for an eCommerce platform as well as user data.  Each VW ID owner will have their own "ID" — a user profile that the car will recognize and use as the person approaches the car (using their smart phone).

138.   VW's intends to build an eCommerce platform that directly competes with Onyx, wherein the VW ID's owner profile is linked to the Daily Service.  Users will be able to link their VW ID car truck and use it as a mailbox.  The breadth of its intent to use ID is demonstrated in the following press release:

**Connected Community – the new Volkswagen ID**

Anyone who drives a Volkswagen in the future will be given their own Volkswagen ID. The ID is an individual profile, in which the personal seat and air conditioning settings, your favorite radio stations and songs, the sound system settings, the configuration of the navigation system, and the type of ambient lighting, as well as the contact details of the driver's friends and business associates, are saved. This profile can be securely accessed via the cloud, enabling the I.D. to recognize the legitimate user by their smartphone—the Digital Key—and know who is about to get behind the wheel.

With the I.D. you'll be at home on the road because, with Volkswagen Home-Net, it will be possible to interconnect your car and home. For example: using cameras in your house you will be able to check whether everything is OK at home from the car. If a family member has forgotten their key, all you need do is call and look into the camera, and I.D. sends the picture to the Active Info Display, so that the driver can open the front door using an app.

It could even become perfectly normal to receive parcels on the road, since the new Delivery Service in the trunk of your car can act as a mailbox. Studies show that millions of parcels sent in Europe could alternatively be delivered to the trunk of a Volkswagen parked anywhere between Helsinki and Lisbon. If the car owners aren't at home, I.D. would be able to receive parcels simply and efficiently, or allow them to be collected. The parcel delivery agent is able to locate the car by GPS and is granted temporary permission to open the trunk via an app. The car's owner is then notified via an app or e-mail as soon as the parcel has been delivered and the trunk is locked again. Volkswagen is currently working with international logistics service providers to implement this innovative concept.

*See* Exhibit 14, VW Press Release dated September 29, 2016.

139.   Based upon recent promotional videos, the user speaks to "ID" through voice activated commands.  In videos released on April 1, 2020, "ID" will have a voice and a personality.   *See* "Volkswagen ID.3 - ID. Light and Hello ID.," YouTube, *available at* https://youtu.be/85GRvBCTudc.  The tag line at the end of this video is: "*Hello ID* together with *ID Light* will take almost everything off your hands — you just have to say the word."



140.   In a second promotional video, VW starts off by saying "Some say you cannot change the game — now you can."  The video then shows several features of the ID.3 car before turning to "Intuitive voice commands."  *See* "Volkswagen ID.3 1ST Edition - Colours and Features," YouTube, *available at* https://youtu.be/ lRz1MdC34fQ.  This video was released on January 28, 2020.



141.   At all relevant times, Onyx began using its iD® Marks prior to VW's infringing use of ID. If VW is permitted to continue use of ID., customers will be confused and deceived into believing that VW's vehicles marked with ID. are in some way affiliated or connected to Onyx when they are not or vice versa. Specifically, given VW's substantial marketing and advertising budget, VW will overwhelm the market with its infringing ID mark.  Consequently, consumers may be confused and deceived into believing Onyx has misappropriated VW's rights, injuring Onyx's reputation, and goodwill.

142.   Onyx has not in any way authorized VW's use of Onyx's iD® Marks or likeness.

## VW'S TRADEMARK ENFORCEMENT AGAINST ECOMMERCE COMPANIES SUGGESTS LIKELIHOOD OF CONFUSION.

143.   VW has enforced its own trademarks against eCommerce companies in the past.

144.   VW filed a trademark infringement action against Vee Dub Parts Unlimited, Inc., alleging the defendants "operat[ed] a competing business selling aftermarket parts for Volkswagen automobiles" on the domain name vwparts.net. *See* Compl. ¶¶ 22, 23, *Volkswagen AG v. Vee Dub Parts Unlimited, Inc.*, No 1:12-cv-00331 (E.D. Va. filed Mar. 23, 2012), attached as Exhibit 15.  VW alleged the defendants' domain name incorporated its mark "in a confusing and infringing manner." *Id.* ¶ 23.

145.   VW filed a trademark infringement action against VW Paradise, Inc., alleging the defendants, inter alia, "[sold] new and used parts for Volkswagen automobiles" on the domain names vwparadise.com and vwparadise-sem.com.  *See* Compl. ¶¶ 22, 23, *Volkswagen AG v. VW Paradise, Inc.*, No 1:11-cv-01107 (E.D. Va. filed Oct. 12, 2011), attached as Exhibit 16.  VW alleged the defendants' domain name incorporated its mark "in a confusing and infringing manner."  *Id*. ¶ 23.

146.   VW filed a trademark infringement action against V.W. Parts, Inc., alleging, inter alia, the defendants "operat[ed] a business selling salvaged and aftermarket parts for Volkswagen automobiles" on the domain names such as vwpartsinc.com and 800vwparts.com.  *See* Compl. ¶ 24, *Volkswagen AG v. V.W. Parts, Inc.*, No 3:08-cv-0082 (N.D.N.Y. filed July 28, 2008), attached as Exhibit 17. VW alleged the defendants' domain name incorporated its mark or used "confusingly similar versions" thereof.  *Id*. ¶ 30.

147.   VW's assertion of its trademark rights against eCommerce companies indicates that consumers are likely to be confused between similar marks used in e-commerce—here, Onyx's iD marks—with VW marks.

148.   Aftermarket parts sales are highly relevant to automobile sales. Reflected in both the case law, as well as the USPTO, it is understood that "vehicles and their various accessories, parts, and attachments may be closely related goods such that the average person encountering the same or similar marks for such

73

products is likely to be confused as to their source. *Re Gen. Motors, E.g.*, 23 U.S.P.Q.2d 1465, 1469 (T.T.A.B. 1992); *In Re Sien Equip. Co.*, 190 U.S.P.Q. 84, 85 (T.T.A.B. 1976). Certainly, by taking a similar position, and by initiating these lawsuits, VW concedes these industries are in fact connected.

149. The close link between areas of commerce of aftermarket parts sales and automobile sales increase the likelihood of confusion between Onyx's iD® marks and VW's infringing ID mark.

150. As one can see from the historical enforcement action taken by VW, they have taken an aggressive stand, indicating that marks such as "Vee Dub Parts Unlimited," "VW Paradise, Inc." and "VW Parts, Inc." are all likely to cause confusion. Ironically, VW's use of "ID" does not seem to have the same impact according to VW.

151. VW's record of asserting its trademarks against eCommerce companies further suggests VW monitors the related field of eCommerce aftermarket part sales. Because VW monitors eCommerce sites, including sites like Onyx's various iD brands, VW knew or should have known about Onyx's iD marks prior to its adoption of the mark. It certainly knew of Onyx's rights long prior to actual use of the mark in the United States on an electric vehicle, part or relate service.

152.   On information and belief, VW intentionally proceeded with plans to introduce its infringing ID mark despite knowledge of Onyx's iD® marks and the potential negative impact of VW's infringing use in a related area of commerce.

## COUNT I
### Federal Trademark Infringement in Violation of 15. U.S.C. § 1114

153.   Onyx incorporates the allegations in Paragraphs 1 through 152 as if fully set forth herein.

154.   This cause of action arises under § 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114.

155.   Onyx is the owner of all right, title, and interest in, to and under its iD® Marks, and all goodwill appurtenant thereto.

156.   VW has, without Onyx's consent, used copies or colorable imitations of Onyx's federally registered iD® Marks in commerce on or in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services.

157.   VW has, without Onyx's consent, used in commerce designations that are copies or colorable imitations of Onyx's iD® marks, as registered under U.S. Registration Nos. 5804750 and 5658672.

158.   VW has, without Onyx's consent, used in commerce designations that are copies or colorable imitations of Onyx's iD® marks, as registered under U.S. Registration Nos. 3711746, 5787890, 5787889, and 5787891.

75

159.  The VW's unauthorized use of the Onyx's federally registered iD®
Marks is likely to cause confusion, mistake, or deception; cause the public to believe
that VW's services are authorized, sponsored, or approved by Onyx when they are
not; and result in VW unfairly and illegally benefitting from Onyx's goodwill.

160.  The VW's unauthorized use of the Onyx's federally registered iD®
Marks is likely to cause confusion, mistake, or deception; cause the public to believe
that VW's services are limited to the sale of VW ID parts and result in VW unfairly
and illegally benefitting from Onyx's goodwill.

161.  Alternatively, VW's unauthorized use of the Onyx's federally
registered iD® Marks is likely to cause reverse confusion, mistake, or deception, and
cause the public to erroneously believe that Onyx is unfairly and illegally benefitting
from VW's junior ID mark when Onyx's iD® Marks predate VW's ID mark.

162.  VW's knowing, intentional, unlicensed, unconsented to, and otherwise
unauthorized use in commerce of Onyx's iD® Marks and/or substantially
indistinguishable variations thereof constitutes infringement of Onyx's iD® Marks,
in violation of 15 U.S.C. § 1114.

163.  The activities of VW complained of herein constitute willful and
intentional infringement of Onyx's iD® Marks in disregard of Onyx's proprietary
rights and were done despite VW's knowledge that use of these marks or any
reproduction, copy, or colorable imitation thereof was and is in direct contravention

76

of Onyx's rights. Even though VW received notice of its infringement, VW intentionally and willfully continues its unauthorized use of the registered iD® marks. Onyx is therefore entitled to statutory and treble damages.

164. VW's unlawful actions will cause Onyx irreparable injury and monetary damages.

165. As a direct and proximate result of VW's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD® Marks and brands, resulting in lost revenues and profits and diminished goodwill.

166. Onyx has no adequate remedy at law and, if VW's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

167. Onyx is therefore entitled to recover actual and treble damages, attorney fees, costs pursuant to 15 U.S.C. § 1117, and injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II
### Federal Trademark Infringement, Unfair Competition, and False Designation of Origin in Violation of 15. U.S.C. § 1125(A)

168. Onyx incorporates the allegations in Paragraphs 1 through 167 as if fully set forth herein.

169.   This cause of action arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*

170.   Onyx is the owner of all right, title, and interest in, to and under its iD® Marks, and all goodwill appurtenant thereto.

171.   Onyx's iD® Marks have been continuously and widely used by Onyx nationwide and abroad, and on its website.  Onyx intends to preserve and maintain its rights to the iD® Marks and to continue the use of the iD® Marks in connection with its distributorship and retail store services relating to the distribution and sale of automotive parts and accessories.

172.   By virtue of the renown of the iD® Marks, the iD® Marks have developed secondary meaning and significance in the mind of the relevant public. Goods and services associated with the iD® Marks are immediately associated by the purchasing public with Onyx's iD® Brands and its e-commerce platforms.

173.   Without Onyx's consent, VW has used, and will continue to use, identical and/or confusingly similar imitations of Onyx's iD® Marks in interstate commerce.

174.   VW's unauthorized use of Onyx's iD® marks and/or confusingly similar variations thereof, is likely to continue to cause confusion, or to cause mistake, or to deceive, consumers and the relevant public into falsely believing that

VW is affiliated, connected, or associated with Onyx's iD® Brands and the iD® Marks.

175.   VW's unauthorized use of Onyx's iD® marks and/or confusingly similar variations thereof, is likely to cause confusion, or to cause mistake, or to deceive, consumers and the relevant public into falsely believing that Onyx is limited to the sale of VW ID parts or that it is affiliated, connected, or associated with VW, unlawfully allowing VW to profit from Onyx's iD® Brands and the iD® Marks.

176.   Alternatively, VW's unauthorized use of Onyx's iD® marks and/or confusingly similar variations thereof, is likely to cause reverse confusion, mistake, or deception in consumers and the relevant public into falsely believing that Onyx's iD® Brands and the iD® Marks are affiliated, connected, or associated with VW and its junior ID mark.

177.   The acts of VW as alleged herein and above constitute trademark infringement, unfair competition, false representation, and/or false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

178.   VW has engaged in this conduct knowingly, willfully, and in bad faith, in disregard of Onyx's proprietary rights.  Even though VW received notice of its infringement, VW intentionally and willfully continued its unauthorized use of Onyx's iD® marks.  Onyx is therefore entitled to statutory and treble damages.

179.   VW's conduct has deprived Onyx of its rightful ability to control the quality of goods and services uniquely associated with Onyx's iD® Marks and to ensure that its associated, valuable goodwill, and reputation are protected.  VW's unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

180.   As a direct and proximate result of VW's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD® Marks and brands, resulting in lost revenues and profits and diminished goodwill.

181.   Onyx has no adequate remedy at law and, if VW's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

182.   Onyx is therefore entitled to recover actual and treble damages, attorney fees, and costs pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III
### Trademark Infringement in Violation of
### N.J. Stat. §§ 56:3-13.13 – 13.20

183.   Onyx incorporates the allegations in Paragraphs 1 through 182 as if fully set forth herein.

184.   Onyx is the owner of the iD® Marks, which it has used continuously and in connection with Onyx's goods and services prior to VW's unauthorized use of its infringing ID mark.

185.   VW is marketing, selling, and otherwise advertising its automotive vehicles under marks that are identical or confusingly similar variations of Onyx's iD® Marks.

186.   VW's use of its infringing ID mark is likely to cause, has caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of VW's goods and services in that consumers and others are likely to believe VW's goods and services are legitimately connected with or approved by Onyx and/or its iD® Brands.

187.   Alternatively, VW's use of its infringing ID mark is likely to cause reverse confusion, mistake, or deception as to the sponsorship, affiliation, or source of Onyx's iD® brands in that consumers and others are likely to falsely believe Onyx's iD® Marks and/or iD® Brands are associated with VW's infringing junior ID mark.

188.   VW has engaged in this conduct knowingly and willfully.

189.   VW's unlawful actions will cause Onyx irreparable injury and monetary damages.

190.   As a direct and proximate result of VW's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD® Marks and brands, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

191.   Onyx has no adequate remedy at law and, if VW's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

## COUNT IV
## Unfair Competition in Violation of N.J. Stat. §§ 56:4-1 – 4-2

192.   Onyx incorporates the allegations in Paragraphs 1 through 191 as if fully set forth herein.

193.   Onyx is the owner of the iD® Marks which it has used continuously and in connection with Onyx's goods and services prior to VW's unauthorized use of its infringing ID mark.

194.   VW's conduct as set forth above constitutes trademark misappropriation in violation of N.J. Stat. § 56:4-1 *et seq.*

195.   VW is marketing, selling, and otherwise advertising its automotive vehicles under marks that are identical or confusingly similar variations of Onyx's iD® Marks.

196.   VW's use of its infringing ID mark is likely to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of VW's goods and

services in that consumers and others are likely to believe VW's goods and services are legitimately connected with or approved by Onyx and/or its iD® Brands.

197.   Alternatively, VW's use of its infringing ID mark is likely to cause reverse confusion, mistake, or deception as to the sponsorship, affiliation, or source of Onyx's iD® brands in that consumers and others are likely to falsely believe Onyx's iD® Marks and/or iD® Brands are associated with VW's infringing junior ID mark.

198.   VW's conduct constitutes unfair competition pursuant to N.J. Stat. § 56:4-1 – 4-2.

199.   VW has engaged in this conduct knowingly and willfully.

200.   VW's unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

201.   As a direct and proximate result of VW's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD® Marks and brands, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

202.   VW's actions as alleged herein with respect to the iD® Marks and the iD® Brands constitute unfair competition in violation of  N.J. Stat. § 56:4-1 et seq., in that VW has engaged in unfair or deceptive acts or practices in the conduct of trade or commerce.

203.   VW expressed intent and strategic planning to engage in the unauthorized use of the iD® Marks and the iD® Brands will cause substantial damage to Onyx's business reputation, ability to compete fairly in the market place, the iD® Marks and iD® Brands, and other rights and properties in an amount which will be determined at trial. VW is entitled to injunctive relief, both immediately and permanently, attorneys fees and costs, and any other equitable relief that the Court deems just and proper.

204.   Onyx has no adequate remedy at law and, if VW's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

## <u>COUNT V</u>
### Unfair Competition in Violation of New Jersey Common Law

205.   Onyx incorporates the allegations in Paragraphs 1 through 204 as if fully set forth herein.

206.   Onyx is the owner of the iD® Marks which it has used continuously and in connection with Onyx's goods and services prior to VW's unauthorized use of its infringing ID mark.

207. VW's conduct as set forth above constitutes trademark misappropriation in violation of New Jersey common law

84

208.  VW is marketing, selling, and otherwise advertising its automotive vehicles under marks that are identical or confusingly similar variations of Onyx's iD® Marks.

209.  VW's use of its infringing ID mark is likely to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of VW's goods and services in that consumers and others are likely to believe VW's goods and services are legitimately connected with or approved by Onyx and/or its iD® Brands.

210.  Alternatively, VW's use of its infringing ID mark is likely to cause reverse confusion, mistake, or deception as to the sponsorship, affiliation, or source of Onyx's iD® brands in that consumers and others are likely to falsely believe Onyx's iD® Marks and/or iD® Brands are associated with VW's infringing junior ID mark.

211.  VW's conduct constitutes unfair competition pursuant to New Jersey common law.

212.  VW has engaged in this conduct knowingly and willfully.

213.  VW's unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

214.  As a direct and proximate result of VW's conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and

reputation acquired under the iD® Marks and brands, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

215.   Onyx has no adequate remedy at law and, if VW's activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

## <u>COUNT VII</u>
**Cancellation of U.S. Registration Nos. 5688385, 5917404, 5917405, 5940895, 5940891, 5917406, 5917407, 5917408, 5917409, 5955688, and 6055588 Under the Lanham Act, 15 U.S.C. § 1119**

216.   Onyx repeats and realleges the allegations set forth in Paragraphs 1 through 215 above.

217.   Upon information and belief, VW is the assignee and owner of the following U.S. Registration numbers:

| Mark | | Date Filed | Registered/Status |
|---|---|---|---|
| ID. NEO | Reg. No. 5688385 | August 14, 2018 | March 5, 2019 |
| ID.1 | Reg. No. 5917404 | December 21, 2018 | November 26, 2019 |
| ID.2 | Reg. No. 5917405 | December 21, 2018 | November 26, 2019 |
| ID.3 | Reg No. 5940895 | December 21, 2018 | December 24, 2019 |
| ID.4 | Reg. No. 5940891 | December 21, 2018 | December 24, 2019 |
| ID.5 | Reg. No. 5917406 | December 21, 2018 | November 25, 2019 |

| ID.6 | Reg. No. 5917407 | December 21, 2018 | November 26, 2019 |
|---|---|---|---|
| ID.7 | Reg. No. 5917408 | December 21, 2018 | November 26, 2019 |
| ID.9 | Reg. No. 5917409 | December 21, 2018 | November 26, 2019 |
| ID. R | Reg. No. 6055588 | May 14, 2019 | May 19, 2020 |
| ID.Buggy | Reg. No. 5955688 | August 8, 2019 | January 7, 2020 |

218.  As the VW ID family remain concept cars that are not available for importation and sale, VW has yet to file evidence of use of the above registrations.

219.  Upon information and belief, VW has yet to publicize the stylized logos for the VW ID Family of vehicles and therefore cannot file specimens of use in support of the above registrations.

220.   Onyx's prior use of the iD® brand, as supported by its registrations detailed herein, predates VW's intent to use the above registrations, and actual use of the above registrations.

221.   In view of Onyx's prior and established rights in the ID mark, the ID Registrations owned by VW are likely to cause confusion, or to cause mistake, or to deceive potential purchasers and others, whereby they would be led to mistakenly believe that VW is affiliated with, related to, sponsored by, or connected with Onyx, all to the damage of Onyx.

222.   Onyx seeks Cancellation of the VW ID Marks advanced in the above table of VW ID marks.

## PRAYER FOR RELIEF

WHEREFORE, Onyx prays for judgment and relief against VW as follows:

A.   A finding of willful infringement associated with VW's knowing and intentional efforts to use the VW ID mark after being advised by the USPTO that its use would infringe Onyx's senior rights.

B.   For preliminary and permanent injunctive relief enjoining VW and any principals, agents, servants, employees, successors and assigns of VW and all those in privity, concert or participation with VW from:

(i)    imitating, copying, duplicating or otherwise making any use of iD on automotive products, retail and wholesale services and otherwise associated with the sale of automotive products;

(ii)    using any unauthorized copy or colorable imitation of Onyx's iD® marks in such fashion as is likely to relate or connect VW with Onyx;

(iii)    using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered or sold by VW is sponsored, endorsed, connected with, approved or authorized by Onyx;

(iv)    causing likelihood of confusion or injury to Onyx's business reputation and to the distinctiveness of the Onyx's iD® marks by unauthorized use of the iD® marks or any mark confusingly similar to the iD® marks;

(v)    engaging in any other activity constituting unfair competition or infringement of Onyx's iD® marks or Onyx's rights in, or to use, or to exploit the same;

(vi)    assisting, aiding, or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (v) above.

C.    Find that VW has infringed upon Onyx's iD® Marks in violation of federal and New Jersey law and damaged Onyx's goodwill by VW's conduct.

D.     Find that VW has unfairly competed with Onyx by the acts complained of herein in violation of federal law and common law.

E.     Find that the acts of VW constitute a violation of N.J. Stat. §§ 56:4-1 – 4.2.

F.     For an order requiring VW to remove any and all references to ID from its products and offerings, including any automobiles, automotive products, automotive retail or wholesale services, account names, logos, photographs or videos, and/or any other posts or references, from the Internet and social media outlets, such as Facebook, Instagram, Twitter, and YouTube.

G.     Find VW liable and award to Onyx monetary damages in an amount to be fixed by the Court in its discretion as just, including all of the VW's profits or gains of any kind, resulting from VW's willful infringement, dilution, and/or acts of unfair competition, said amount to be trebled and exemplary damages where applicable in view of the intentional nature of the acts complained of herein, pursuant to 15 U.S.C. § 1117, N.J. Stat. § 56:4-2.

H.     Award to Onyx statutory damages to the full extent permitted by law.

I.     Award to Onyx its attorneys' fees, due to the exceptional nature of this case, and all of Onyx's costs and expenses of litigation pursuant to 15 U.S.C. § 1117(a) and N.J. Stat. § 56:4-2.

J.      Cancel Registration Nos. 5688385, 5917404, 5917405, 5940895, 5940891, 5917406, 5917407, 5917408, 5917409, 5955688 and 6055588 and

K.      Award to Onyx pre-judgment and post-judgment interest.

L.      Grant to Onyx such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## **JURY DEMAND**

Plaintiff Onyx Enterprises International, Corp. demands a trial by jury on all issues so triable.

Dated: August 31, 2020                              Respectfully submitted,


                                            */s/ Aaron P. Bradford*
                                            Aaron P. Bradford, Esq.
                                            Mishele Kieffer, Esq.
                                            BRADFORD, LTD
                                            2701 Lawrence Street, Suite 104
                                            Denver, Colorado 80205
                                            Telephone: (303) 325-5467
                                            Email:      Aaron@apb-law.com
                                                        Mishele@apb-law.com
                                            *Counsel for Onyx Enterprises Int'l Corp*

                                            /s/ Vincent Miletti
                                            Vincent Miletti, Esq.
                                            LAW OFFICE OF VINCENT MILETTI
                                            2139 East 3rd Street
                                            Brooklyn, New York 11223
                                            Telephone: (347) 234-0034
                                            Email:      Vmiletti@aol.com

*Local Counsel for Onyx Enterprises Int'l Corp*